**Richmond**

CHARMEEN GRAY

v.

COMMONWEALTH OF VIRGINIA

No. 1853-91-2

Decided June 15, 1993

514

COUNSEL

James F. Kelley, for appellant.

Margaret Ann B. Walker, Assistant Attorney General (Mary Sue Terry, Attorney General; Margaret Ann B. Walker, on brief), for appellee.

OPINION

**COLE, J.**\*—Charmeen Gray was convicted of malicious wounding and sentenced to fifteen years imprisonment. At his trial, Gray moved for a continuance because two material out-of-state witnesses, who had been subpoenaed in New York, were not present. The trial judge denied the continuance and Gray appeals. On appeal, Gray contends that the trial judge abused his discretion by denying Gray's motion for a continuance. We reverse, finding that where, as here, Gray did all that was possible to secure material out-of-state witnesses, thereby exercising due diligence, the trial judge abused his discretion in denying the continuance, at least for a brief period of time.

---

\* Retired Judge Marvin F. Cole took part in the consideration of this case by designation pursuant to Code § 17-116.01.

Before swearing in and empaneling the jury, the trial judge heard and ruled on two pretrial matters, neither of which is relevant to this appeal. The jury was then brought into the courtroom and sworn in, after which, witnesses were excluded. Opening statements were presented and the court took a brief recess.

With the jury out, Gray's counsel moved for a continuance because two of his material out-of-state witnesses had failed to appear in court. The record shows that, in the week before the trial, subpoenas were served on the witnesses in New York pursuant to the Uniform Act to Secure the Attendance of Witnesses from without a State in Criminal Proceedings, Code §§ 19.2-272 through 19.2-282 (hereinafter the Uniform Act). Gray's counsel explained that he had talked to the witnesses the day before the trial, and they had represented to him that they were on their way to Fredericksburg and had made arrangements for a place to stay. It was further brought out that the witnesses had appeared before a New York court which ordered them to appear in Virginia, and that a New York Public Defender who had spoken with the witnesses had assured defense counsel they would be present. Defense counsel also represented that he had not made this motion at the beginning of the case because he did not intend to use the alibi witnesses; however, the day before trial, he learned from the Commonwealth that it had recently located rebuttal witnesses.

Defense counsel explained to the court that these two material, alibi witnesses were not taken into custody pursuant to Code § 19.2-277 because of their assurances that they would voluntarily appear at the trial to testify.

As to the witnesses, defense counsel stated:

These are material witnesses. The Commonwealth and I proffer to the Court that the witnesses will testify that Mr. Gray was in New York at the time of this incident and that they were with him at a barbeque, a yard party, on the date and time of this incident in question. And I believe that makes them material witnesses, and I don't see any way that I can avoid sending for those witnesses.

The Commonwealth objected to a continuance, asserting that it was ready to proceed. The victim and his mother were both present in court, and both of them had come from New York to be present at trial.

The trial judge accepted defense counsel's representations that the witnesses were served with subpoenas, despite the fact that no returns were received; however, he denied the motion for continuance, noting the delayed manner in which the appellant secured a certificate commanding the presence of the out-of-state witnesses (on September 27) for the October 9 trial and the fact that the witnesses "knew about the trial date, and they voluntarily pledged that they would be here and they're not here."

The Commonwealth's witnesses included the victim, who identified Gray as the person who shot him, and Bernard Scott, who testified that he saw Gray pull out a gun and follow the victim and another person behind a building; immediately after they disappeared, Scott heard three shots.

At the conclusion of the Commonwealth's case, appellant moved to strike, which motion was denied. A brief recess was taken, after which appellant futilely called the two absent out-of-state witnesses to testify. Renewing his motion for a continuance, which was denied, appellant rested. The jury then deliberated and returned a verdict of guilty.

■ "In all criminal prosecutions, the accused shall enjoy the right to . . . have compulsory process for obtaining witnesses in his favor . . . ." U.S. Const. amend. VI. Similarly, Article I, § 8 of the Virginia Constitution states "[t]hat in criminal prosecutions a man hath a right to . . . call for evidence in his favor." Virginia courts have consistently upheld this right to subpoena witnesses and compel their attendance. *See, e.g., Cox v. Commonwealth*, 227 Va. 324, 315 S.E.2d 228 (1984); *Hill v. Commonwealth*, 88 Va. 663, 14 S.E. 330 (1892).

> This right to call for evidence is a compendious one. It is the basis for the general right to prepare for trial and the specific rights to interview material witnesses to learn the truth. It is the right to have not only the presence of a witness, but all testimony available from the witness.

John L. Costello, *Virginia Criminal Law and Procedure* § 48.1 (1991); *see also* Charles E. Friend, *The Law of Evidence in Virginia* § 10 (3d ed. 1988).

■ " 'The decision whether to grant a continuance is a matter within the sound discretion of the trial court. Abuse of discretion and prejudice to the complaining party are essential to reversal.' " *Lowery v. Commonwealth*, 9 Va. App. 304, 307, 387 S.E.2d 508, 509 (1990)

(quoting *Venable v. Venable*, 2 Va. App. 178, 181, 342 S.E.2d 646, 648 (1986)). "In considering a request for a continuance, the court is to consider all the circumstances of the case." *Venable*, 2 Va. App. at 181, 342 S.E.2d at 648. Where a continuance is requested because a witness is absent, prejudice "must appear from the record" so that a reviewing court can examine the content of the witness's expected testimony to determine prejudice. *Lowery*, 9 Va. App. at 307, 387 S.E.2d at 510.

"[A] motion for a continuance in order to obtain the presence of a missing witness is addressed to the sound discretion of the trial court whose decision will not be reversed unless the record affirmatively shows an abuse of discretion." This discretion, however, "must be exercised with due regard to the constitutional guaranty of a fair and impartial trial to one accused of crime, and the right to call for evidence in his favor."

In determining whether the trial court properly exercised its discretionary powers, we look to the diligence exercised by the moving party to locate the witness and secure his attendance at trial.

*Cherricks v. Commonwealth*, 11 Va. App. 96, 99-100, 396 S.E.2d 397, 399 (1990).

■ Code §§ 19.2-272 through 19.2-280 provide the mechanism for procuring a witness from or for another state. The operative section for summoning an out-of-state witness to Virginia states:

If a person in any state which by its laws has made provision for commanding persons within its borders to attend and testify in criminal prosecutions or grand jury investigations commenced or about to commence in this Commonwealth is a material witness in a prosecution pending in a court of record in this Commonwealth, . . . *a judge of such court may issue a certificate under the seal of the court stating these facts and specifying the number of days the witness will be required. The certificate may include a recommendation that the witness be taken into immediate custody and delivered to an officer of this Commonwealth to assure his attendance in this Commonwealth.*

Code § 19.2-277 (emphasis added).[1]

■ Where the proponent of a continuance fails to indicate that a missing witness is material, there is no abuse of discretion in denying the continuance. *Shifflett v. Commonwealth*, 218 Va. 25, 30, 235 S.E.2d 316, 319-20 (1977) (also finding lack of due diligence in procuring witness's presence); *see also Lacks v. Commonwealth*, 182 Va. 318, 323-24, 28 S.E.2d 713, 716 (1944) (Court will review and reverse action of inferior court, if, in exercise of discretion, it has harshly or unjustly refused continuance, especially where no suggestion that continuance was to delay, evade trial or not prepare for trial).

■ "[C]ontinuances in the midst of trial should not be an everyday occurrence. Nevertheless, such decisions are entrusted to the sound discretion of the trial court." *Bennett v. Commonwealth*, 236 Va. 448, 461, 374 S.E.2d 303, 311-12 (1988), *cert. denied*, 490 U.S. 1028 (1989).

The record contains defense counsel's averment that the missing witnesses were material; indeed, he represented that they would testify that Gray was in New York on the day of the shooting. The record further contains evidence that the witnesses had appeared before a New York court that commanded their presence at trial and that the witnesses had promised both the New York Public Defender's office and Gray's counsel that they would be present at trial. The witnesses represented that they would be taking a bus to Fredericksburg, and they had secured a place to stay while in Virginia.

■ Despite defense counsel's use of the procedure for securing out-of-state witnesses under the Uniform Act, the trial judge found that Gray failed to exercise due diligence. We believe that Gray did all that was possible to secure the witnesses' presence, and that the permissive language of Code § 19.2-277, allowing that a certificate from a Virginia court "may include a recommendation that the witness be taken into immediate custody and delivered to an officer of this Commonwealth to assure his attendance in this Commonwealth," does not require that a party always request a recommendation to take the witness into custody, especially where, as here, the witnesses have

---

[1] As to sanctions against a summoned witness for failing to testify, Code § 19.2-279 provides that "[i]f such witness, *after coming into this Commonwealth*, fails without good cause to attend and testify . . . he shall be punished in the manner provided for the punishment of any witness who disobeys a summons issued from a court of record in this Commonwealth." (emphasis added).

assured numerous officials that they would be present. There was no indication that the witnesses would not be present; in such a situation a party is not required to request that friendly, cooperative out-of-state witnesses be taken into custody as a matter of course.

We find that the trial judge abused his discretion in denying a continuance. We disagree with the trial judge's finding that Gray failed to exercise due diligence. We also find that the trial judge erred in holding that the trial could not be continued until the witnesses could be secured because by that time the jury panel probably would be finished with its service. Nothing in the record suggests that the witnesses could not be secured before the end of the jury term. On the contrary, appellant's counsel represented that he knew how to locate the witnesses.

Furthermore, Virginia case law does not require that a witness's attendance must be assured before the end of a jury's term; the Virginia Supreme Court has merely suggested that there be some assurance that the witness can "be secured at the *next* term." *Lacks*, 182 Va. at 325, 28 S.E.2d at 716 (emphasis added). Additionally, other factors must be considered, such as due diligence to summon the witness, the materiality of the witness, whether the continuance is for a dilatory purpose and prejudice to the party.

The record indicates that the witnesses were material, that due diligence was exercised, and that counsel knew how to locate the witnesses. Nothing in the record suggests that Gray was attempting to delay the trial. The trial judge should have allowed at least a brief continuance, so that defense counsel could find out why the witnesses were absent. Failing to do this, we find that the trial judge abused his discretion in denying Gray's motion.

Accordingly, we reverse Gray's conviction and remand for a new trial.

*Reversed and remanded.*

Moon, C.J.,** and Benton, J., concurred.

---

** On May 1, 1993, Judge Moon succeeded Judge Koontz as Chief Judge.