COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Athey, Chaney and Lorish


WILLIE J. CANNON, JR.

                                               MEMORANDUM OPINION[*] BY

v.       Record No. 0344-22-2           JUDGE CLIFFORD L. ATHEY, JR.
                                                   FEBRUARY 28, 2023

CHESTERFIELD-COLONIAL HEIGHTS
 DEPARTMENT OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Lynn S. Brice, Judge

(Mark Englisby; Bourdow, Bowen & Ellis, on brief), for appellant.
Appellant submitting on brief.

(Michael S. J. Chernau, Senior Deputy County Attorney; Joshua
Farmer, Guardian *ad litem* for the minor children; Farmer Legal,
PLLC, on brief), for appellee. Appellee and Guardian *ad litem*
submitting on brief.


Willie Cannon, Jr. ("father") appeals orders from the Circuit Court of Chesterfield County

("circuit court") terminating his parental rights in two children, S.C. and D.C. Father contends that

the circuit court abused its discretion by denying his motion for a continuance on the morning of the

final hearing in the circuit court. Father also assigns error to the circuit court's finding that there

was sufficient evidence to terminate his parental rights. We disagree and affirm the circuit court's

decision to terminate his parental rights. Both parties waive oral argument on appeal.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND[1]

Father and Channa Huffman-Davadi ("mother") are the biological parents of their minor children, S.C. and D.C. The Chesterfield-Colonial Heights Department of Social Services ("DSS") became involved with the family after D.C. was born substance exposed in August of 2020. DSS further learned that S.C., who was then thirteen months old, had also been previously born substance exposed. Mother reported that she was no longer in an intimate relationship with father.

By September of 2020, DSS had sought to remove S.C. and D.C. from both parents' custody because DSS had been unable to locate father and was concerned about mother's "unstable living conditions, active substance use, and refused drug screens." At the urging of DSS, the Chesterfield County Juvenile and Domestic Relations District Court (the "JDR court") entered emergency and preliminary removal orders related to the children. The JDR court subsequently adjudicated the children abused or neglected and entered dispositional orders reflecting that finding.

The children were then placed in foster care, and DSS established requirements father had to meet before he could be reunited with S.C. and D.C. For example, DSS required father to obtain and maintain employment and safe, stable housing. Father was also referred for a psychological examination and parent support services. He was required to submit to random drug screens and "not engage in criminal activity." DSS also offered father supervised visitation,

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues father has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

provided he complied with their substance abuse recommendations, and maintained contact with DSS by notifying them of any changes of address, employment, or phone number.

Father initially tested negative for illegal drugs on September 21, 2020, October 13, 2020, and November 20, 2020, before refusing to be tested on February 12, 2021. Father then tested positive for marijuana on March 1, 2021, and again in April of 2021. Also, in March of 2021, father and mother were evicted from a motel where they had been staying as part of a homeless housing program. The hotel manager had expressed concerns about mother's substance abuse, domestic violence between mother and father, and the cleanliness of the room.

In addition to being concerned about father's lack of stable housing, DSS became concerned that father had still failed to secure gainful employment. Although father claimed he was self-employed, working "with cars," he provided DSS no verification or documentation of his employment or income. DSS also received reports that father was "selling illicit substances." Father was subsequently charged with possession of Schedule I/II drugs in April of 2021 but did not inform DSS of the new criminal charge.

As a result, in June of 2021, DSS petitioned the JDR court to convert the goal for the children to foster care leading to adoption. Then, father tested positive for marijuana at subsequent hearings held on July 26, 2021, and on September 24, 2021. Father also tested positive for cocaine and methamphetamine. When the JDR court tested father again on October 1, 2021, he continued to test positive for marijuana.

In light of the above and considering father's overall lack of progress, DSS "paused" father's visitation with the children because his deficiencies became so acute. Although initially father had participated regularly in supervised visitation, his participation became less consistent over time. To his credit, father completed the required psychological evaluation, but failed to attend the feedback session or follow through with the psychologist's recommendations. Father

recommenced working with parent support services in September of 2020 but was discharged again by January of 2021 due to a "lack of engagement, commitment to services and a lack of progress."

To provide father with "another opportunity to achieve the goals of the foster care plan," DSS reinstated his parent support services again in June of 2021, however, the services ended after DSS received a report of father's continued "lack of engagement." The JDR court subsequently approved changing the foster care plan goal to adoption and, several months later, terminated father's parental rights to S.C. and D.C.[2] Father appealed the JDR court's termination orders to the circuit court.

When S.C. first entered foster care, she was fourteen months old and weighed only fifteen pounds. While in foster care, S.C. steadily gained weight, reaching 25.8 pounds by the time of the circuit court hearing. S.C. also completed feeding and speech therapy and was "a very active and busy little girl" according to her foster mother. D.C. experienced withdrawal symptoms for four months after being born substance exposed, however during the circuit court hearing, both children were described as "developmentally on target." Although father had obtained a job by the time of the circuit court hearing, he was still residing in a motel room and had not been able to secure more stable housing. Father's substance abuse remained a concern at the hearing as he continued to test positive for drugs and admitted to using marijuana.

On January 18, 2022, father's attorney moved to withdraw from the case for "health reasons." Father's attorney advised the circuit court that she had spoken with an attorney who was "willing and able to accept the appointment as counsel." Her motion to withdraw indicated that father's new attorney would be "available on the trial date, January 28, 2022, at 10:00 a.m."

_____

[2] The JDR court also terminated mother's parental rights to S.C. and D.C. Mother appealed the JDR court's rulings to the circuit court. The circuit court dismissed her appeal after she failed to appear for the hearing.

Her motion to withdraw also indicated that a copy of the motion had been mailed to all parties, including the proposed new attorney. On January 20, 2022, the trial court entered an order permitting the withdrawal of father's then attorney and substituting father's new counsel as the attorney of record in the case.

On January 28, 2022, the date set for trial in the circuit court, father's new counsel moved for a continuance based solely on his representation that he had just met with father that morning and had not yet secured prior counsel's file. The circuit court denied the motion for continuance, finding that father's substituted counsel had "sufficient time" before the trial to meet with father, the matter had been pending "for a long time," and a continuance was not in the children's best interests. The circuit court did offer to recess so that father and his new counsel had "additional time to meet . . . and prepare further if necessary," but father "declined" the circuit court's offer for a recess and stated that he was "ready to proceed." At the conclusion of the hearing, by final orders, the circuit court terminated father's parental rights to S.C. and D.C. pursuant to Code § 16.1-283(C)(2). Father appealed.

## II. ANALYSIS

### A. *Standard of Review*

"The decision of whether to grant a continuance is committed to the discretion of the trial court. We will reverse 'a trial court's ruling on a motion for a continuance . . . only upon a showing of abuse of discretion and resulting prejudice to the movant.'" *Shah v. Shah*, 70 Va. App. 588, 593 (2019) (alteration in original) (quoting *Haugen v. Shenandoah Valley Dep't of Soc. Servs.*, 274 Va. 27, 34 (2007)).

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018)

(alteration in original) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)).

B. *The circuit court did not err by denying the continuance request.*

Father contends that the circuit court abused its discretion by denying his motion for a continuance. We disagree.

When denying the requested continuance, the circuit court found that "the matter had been pending for a long time, and it was not in the children's best interests for the case to be continued." The litigation began in the JDR court in September of 2020, and the children had been in foster care for approximately sixteen months by the time of the circuit court hearing. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 322 (2013) (alteration in original) (quoting *Kaywood v. Halifax Cnty. Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990)). "Given the length of time the case had been ongoing, it was not beyond the pale for the trial court to believe that even a short continuance had the potential to be harmful to the child[ren] while providing little in the way of benefit to the parties or the court." *Geouge v. Traylor*, 68 Va. App. 343, 375 n.13 (2017).

Moreover, to establish the "necessary prejudice," father "must establish that the decision to deny [him] a continuance prevented [him] from presenting [his] case or otherwise caused [him] to lose the case." *Id.* at 374. Here, father has failed in that regard, in part, because the record reflects that father was both represented by counsel and testified at the hearing after

declining the opportunity for a recess. The trial court's "ultimate ruling against [father] was the result of its determination of the facts of the case and not the result of the denial of [his] continuance request." *Id.* Father's history of substance abuse, lack of engagement in services, lack of progress toward stable employment and a stable shelter for the children would have existed whenever the trial would have occurred because the deficits in his case "were not caused or exacerbated by the trial court's denial of the requested continuance." *Id.*

Thus, considering the totality of the circumstances in the case and since father failed to "demonstrate the necessary prejudice," the circuit court did not abuse its discretion in denying the requested continuance. *Id.* at 375.

C. *The circuit court did not err by terminating father's parental rights.*

Father argues that the circuit court erred in finding the evidence sufficient to support the termination of his parental rights under Code § 16.1-283(C)(2). We disagree.

The circuit court terminated father's parental rights under Code § 16.1-283(C)(2), which authorizes a court to terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or
> unable within a reasonable period of time not to exceed 12 months
> from the date the child was placed in foster care to remedy
> substantially the conditions which led to or required continuation
> of the child's foster care placement, notwithstanding the
> reasonable and appropriate efforts of social, medical, mental health
> or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 552 (2018) (alteration in original) (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)).

- 7 -

Here, despite the numerous services offered by DSS, father never maintained consistent progress in remedying the conditions that caused the need for foster care. Father did not comply with many of the services, including the parent support services. Although father obtained a job by the time of the circuit court hearing, he was still living in a motel room unsuitable for the minor children. Despite his stated intention to move to a two-bedroom apartment, father had not accomplished this during the over sixteen-month period before the trial date in circuit court. Moreover, father's abuse of several illegal substances remained a valid concern for the circuit court.

Additionally, the children exhibited positive developments while in foster care. S.C. gained weight, benefitted from therapy, and the child's mental and physical development was age appropriate. Despite experiencing withdrawal symptoms for four months after being born, D.C. was also "developmentally on target" at the time of the circuit court hearing.

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." *Tackett*, 62 Va. App. at 319 (quoting *Logan*, 13 Va. App. at 128). Here, the record supports the circuit court's finding that it was in the children's best interests to terminate father's parental rights, and the evidence was sufficient to support termination under Code § 16.1-283(C)(2).

### III. CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*

Chaney, J., dissenting.

The circuit court ordered the involuntary termination of Willie Cannon's parental rights to two of his minor children eight days after the circuit court (1) allowed Mr. Cannon's court-appointed counsel to withdraw from the representation due to health reasons and (2) appointed substitute counsel to represent Mr. Cannon, an indigent parent. The circuit court abused its discretion and seriously imperiled the just determination of the parental rights cases by denying Mr. Cannon's continuance motion and forcing him to trial when—through no fault of Mr. Cannon—his court-appointed attorney was blatantly unprepared to effectively represent him. Therefore, I must dissent from the majority's opinion affirming the circuit court's orders denying Mr. Cannon's continuance motion and involuntarily terminating his parental rights.

A trial court can abuse its discretion in three principal ways:

> [1] when a relevant factor that should have been given significant weight is not considered; [2] when an irrelevant or improper factor is considered and given significant weight; and [3] when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment.

*Landrum v. Chippenham & Johnston-Willis Hosps., Inc*., 282 Va. 346, 352 (2011) (quoting *Kern v. TXO Prod. Corp*., 738 F.2d 968, 970 (8th Cir. 1984)). Additionally, a trial court "by definition abuses its discretion when it makes an error of law." *Porter v. Commonwealth*, 276 Va. 203, 260 (2008) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)).

"In considering a request for a continuance, the court is to consider all the circumstances of the case." *Gray v. Commonwealth*, 16 Va. App. 513, 517 (1993) (quoting *Venable v. Venable*, 2 Va. App. 178, 181 (1986)). "[I]f there is no sufficient reason to induce the belief that the alleged ground of the motion is feigned, a continuance should be granted, rather than to seriously imperil the just determination of the cause by refusing it." *Myers v. Trice*, 86 Va. 835, 842 (1890).

"The decision to grant a motion for a continuance is within the sound discretion of the circuit court and must be considered [on appeal] in view of the circumstances unique to each case." *Haugen v. Shenandoah Valley Dep't of Soc. Servs.*, 274 Va. 27, 34 (2007). "The circuit court's ruling on a motion for a continuance will be rejected on appeal only upon a showing of abuse of discretion *and* resulting prejudice to the movant." *Id.* "Additionally, in the application of these principles, . . . *when a circuit court's refusal to grant a continuance 'seriously imperil[s] the just determination of the cause,' the judgment must be reversed.*" *Id.* (second alteration in original) (emphasis added) (quoting *Myers*, 86 Va. at 842). Under the holdings in *Haugen* and *Myers*, it is inherently prejudicial to deny a continuance motion when doing so seriously imperils the just determination of the cause. Thus, contrary to the majority's opinion, an appellant challenging the denial of a continuance motion is not required to make an additional showing of prejudice where, as here, the trial court's refusal to grant a continuance seriously imperiled the just determination of the cause.

Eight days before the scheduled trial date, on January 20, 2022, the circuit court entered an order granting Mr. Cannon's court-appointed attorney's motion to withdraw. Without hearing or further inquiry, the circuit court appointed the attorney identified in the motion as an attorney who had agreed to the appointment.[3]

On the scheduled trial date, Mr. Cannon's newly-appointed attorney moved to continue the trial because (i) he had not received Mr. Cannon's case file from Mr. Cannon's former

---

[3] The circuit court's order appointing substitute counsel for Mr. Cannon directed the Clerk of court to mail a copy of the substitution order to Mr. Cannon at a specified address in Richmond. The appellate record shows that a mailing to Mr. Cannon at that specified address from the Clerk of court was postmarked on January 25, 2022, and subsequently marked "return to sender." This indicates that Mr. Cannon received no notice that the circuit court had appointed new counsel to represent him. However, because the information related to this lack of notice is not included in the statement of facts, this information is not considered on appeal. *See Smith v. Commonwealth*, 59 Va. App. 710, 722 (2012).

court-appointed counsel and (ii) his first contact with Mr. Cannon had occurred that morning. In denying Mr. Cannon's motion to continue, the circuit court found—with no apparent factual basis—that Mr. Cannon's new counsel had sufficient time to meet with him prior to the trial date. The circuit court also stated that the matter had been pending for a long time, and it was not in the children's best interests for the case to be continued.

The circuit court abused its discretion in denying Mr. Cannon's continuance motion by failing to give appropriate weight to the gravity of the termination proceeding and to the importance of adequate preparation by Mr. Cannon's counsel. "The termination of parental rights is a grave, drastic, and irreversible action." *Id.* at 34-35 (quoting *Lowe v. Dep't of Pub. Welfare of the City of Richmond*, 231 Va. 277, 280 (1986)). When a court orders the termination of parental rights, the parent is divested of all legal relations to the child "and the parent has no legal right to even communicate [with] or visit that child." *Id.* at 34. "[T]he ties between the parent and child are severed forever, and the parent becomes 'a legal stranger to the child.'" *Lowe*, 231 Va. at 280 (quoting *Shank v. Dep't Soc. Servs.*, 217 Va. 506, 509 (1976)). Given the gravity of involuntarily terminating parental rights, a trial court should not deny a parent's motion to continue the trial on the termination petitions when, as here, the parent's recently-appointed counsel is obviously unprepared to competently and effectively represent him. Minimally adequate preparation to represent a parent at such a momentous trial includes reviewing the case file of the parent's former counsel, if any, and meeting with the parent before the trial date. Given that Mr. Cannon's new counsel had an insufficient opportunity to satisfy these prerequisites for minimally adequate preparation, the just adjudication of the petitions was seriously imperiled. *See Gilchrist v. Commonwealth*, 227 Va. 540, 546 (1984) (reversing trial court's order denying continuance motion where "counsel were not afforded a reasonable time to investigate and prepare the trial of a serious, complex case"). No child's best interests are served

by denying a continuance of a parental rights termination trial under these circumstances.  And the circuit court's offer to briefly recess the proceedings to allow Mr. Cannon's new counsel to confer with him did not provide a reasonable opportunity for proper preparation for the momentous trial.[4]  *See Wright v. Alexandria Div. of Soc. Servs.*, 16 Va. App. 821, 825 (1993) (recognizing that a parent has a constitutional right to effective assistance of counsel at proceedings on petitions to involuntarily terminate parental rights).

The circuit court also abused its discretion by failing to give appropriate weight to the fact that neither DSS nor the GAL objected to Mr. Cannon's continuance motion.  The lack of objections to the continuance request indicates that granting a continuance would not prejudice either DSS or the children.[5]  When this lack of prejudice is balanced against the injustice suffered by Mr. Cannon from being represented by obviously unprepared counsel in such a gravely serious matter, it is apparent that the circuit court's denial of the continuance request constitutes a clear error in judgment.

The circuit court also abused its discretion by denying Mr. Cannon's continuance motion based on its finding that the matter had been pending for a long time.  The record shows that the case had not been pending in the circuit court for an excessive period of time when the trial court

---

[4] Mr. Cannon did not waive his right to appeal the denial of his motion to continue the trial when his new attorney declined the circuit court's offer for a brief recess.  Mr. Cannon's recently appointed attorney clearly informed the circuit court that he was unprepared for trial because he had yet to receive Mr. Cannon's case file from his prior court-appointed counsel. These proffers were not contradicted by Mr. Cannon's counsel's subsequent statement that he was ready to proceed after the circuit court denied his motion to continue the trial and offered a brief recess instead.  In context, Mr. Cannon's counsel's statement that he was ready to proceed is reasonably understood to mean that he was as ready as he could be given the court's refusal to continue the trial date and the obvious futility of trying to prepare for trial during a recess when he still did not have Mr. Cannon's case file from his former counsel.

[5] No objections to Mr. Cannon's continuance motion are recorded in the statement of facts that was filed in lieu of a transcript.  On appeal, the statement of facts signed by the trial judge is presumed to be an accurate and complete recitation of the incidents of trial.  *See* Rule 5A:8(c); *Smith*, 59 Va. App. at 722.

denied Mr. Cannon's continuance motion. The case was docketed in the circuit court after Mr. Cannon filed his notice of appeal for de novo trial on October 1, 2021, and the continuance motion was denied on January 28, 2022, the original trial date. There were no prior continuances of the trial. Moreover, a continuance of the trial date for a reasonable period of time to permit Mr. Cannon's newly-appointed counsel to prepare would not unduly delay the termination proceedings.

The circuit court's denial of Mr. Cannon's continuance motion was an abuse of discretion that seriously imperiled the just adjudication of the petitions to involuntarily terminate Mr. Cannon's parental rights. Therefore, as required by our Supreme Court's holdings in *Haugen* and *Myers*, I would reverse the circuit court's judgment denying Mr. Cannon's continuance motion, vacate the orders involuntarily terminating Mr. Cannon's parental rights, and remand for a new trial.