Present:  All the Justices

COMMONWEALTH OF VIRGINIA

v.    Record No. 971537   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                    April 17, 1998
ANTWAN R. JENKINS


              FROM THE COURT OF APPEALS OF VIRGINIA


     In this appeal of convictions of first degree murder and
use of a firearm in the commission of murder, we consider
whether the evidence was sufficient to prove that the victim
died from gunshot wounds inflicted by the defendant.

     On May 21, 1995, in the City of Portsmouth, Antwan R.
Jenkins fired several gunshots at Kelly Jackson, inflicting
three wounds.  Jackson was later taken to a hospital where he
received medical treatment for his injuries, including emergency
surgery to repair damage to his colon.  Four days later, Jackson
died while still in the hospital.

     Jenkins was indicted for unlawfully and feloniously killing
Jackson, in violation of Code § 18.2-32, and for use of a
firearm in the commission of a felony, in violation of Code
§ 18.2-53.1.  During a jury trial, Dr. Faruk Presswalla, Deputy
Chief Medical Examiner for the Commonwealth, testified that he
performed an autopsy on Jackson and determined that Jackson had
sustained three gunshot wounds.  One bullet entered Jackson's
back and moved through the skin and muscles of the back without

penetrating any body cavity or vital organ.  A second bullet, which entered Jackson's chest on the right side and fractured a rib, did not injure any vital organ or structure.  The third bullet entered Jackson's abdomen, ultimately perforating his colon.

Dr. Presswalla testified that Jackson had aspirated vomit, as indicated by vomit found in Jackson's "airway" and in his lungs.  Dr. Preswalla explained that the "vomit [went] up and down into the airway, into his lungs."  When asked whether he had formed an opinion regarding the cause of Jackson's death, Dr. Presswalla stated that Jackson "died as a result of this aspiration following the gunshot wound to the abdomen."

Dr. Jeff Carney, a surgical resident who treated Jackson at the hospital, testified that on May 25, 1995, he entered Jackson's room and noted that Jackson was markedly pale and was sweating profusely.  Dr. Carney then observed Jackson, who was lying on his back, begin vomiting.  After rolling Jackson onto his side, Dr. Carney waited until the vomiting episode had ended.  He then placed Jackson on his back and observed that Jackson "was in respiratory arrest or that he was not breathing."  Shortly thereafter, Jackson died.

Dr. Carney testified that Jackson appeared to have been healthy before he sustained the gunshot wounds.  Dr. Carney also stated that, at the time of his death, Jackson might have had

2

"some type of seizure activity."  Dr. Carney explained, "I am not a neurologist, I simply base [the statement regarding a possible seizure] on the opinion that [Jackson] had some spastic movements in his extremities."  Dr. Carney stated that he could not offer an opinion whether Jackson actually had suffered a seizure.

Jenkins introduced into evidence a typewritten discharge summary, which was dictated and signed by Dr. Carney.  On this document, a handwritten notation entered in the top margin of the first page stated:

    Many Factors contributed to his death but all were result
    of Gun Shot wound
    Bowel injury and contamination
    Extensive laporotomy
    Intubated.

The record contains no testimony from any witness concerning the origin of this handwritten notation.  When Jenkins' counsel offered the document in evidence, he did not request that the handwritten entry be excluded from the exhibit.

The jury found Jenkins guilty of first degree murder and fixed his punishment at 23 years' imprisonment.  The jury also found Jenkins guilty of use of a firearm in the commission of murder and fixed his punishment for that offense at three years' imprisonment.  The trial court entered judgment in accordance with the jury's verdict.  The Court of Appeals awarded Jenkins an appeal from this judgment.

In the Court of Appeals, Jenkins argued that the evidence failed to show beyond a reasonable doubt that any of the three gunshot wounds he inflicted on Jackson was the cause of Jackson's death. The Court of Appeals agreed, holding that "the fact finder had no way of determining whether Dr. Presswalla meant that the aspiration was simply an unrelated event which coincidentally occurred after the gunshot wound, or a result of the gunshot wound with a causal relationship thereto." In an unpublished opinion, the Court of Appeals acknowledged the presence of the handwritten note on the discharge summary but held that, because "[t]here is no indication in the record of the source or author of this handwritten note . . . . we can only speculate as to its origin, authenticity, and authorship, and we are constrained by the record before us to disregard it." The Court of Appeals reversed Jenkins' convictions and dismissed the indictments.

The Commonwealth filed a petition for appeal in this Court pursuant to Code §§ 17-116.08 and 19.2-317(c).[*] We awarded the Commonwealth an appeal.

The Commonwealth argues that Dr. Presswalla's testimony provided sufficient evidence to prove that Jackson died from the

---

[*]These statutes allow the Commonwealth to seek a writ of error if it is aggrieved by a judgment of the Court of Appeals in any criminal case in which the judgment is not made final under Code §§ 17-116.07 or 19.2-408.

4

gunshot wounds inflicted by Jenkins. The Commonwealth also contends that the handwritten notation on the discharge summary constitutes further competent evidence to prove that Jackson died as a result of the gunshot wounds. In addition, relying on Gallimore v. Commonwealth, 246 Va. 441, 436 S.E.2d 421 (1993), the Commonwealth argues that even if Jackson had a seizure prior to his death, such an intervening event would not exonerate Jenkins because any such seizure would have been "put into operation" by Jenkins' acts.

In response, Jenkins argues that the Commonwealth failed to prove beyond a reasonable doubt that Jackson died from the gunshot wounds. Jenkins asserts that Dr. Presswalla did not state that the gunshot wounds caused Jackson to aspirate the vomit, and that Dr. Carney's testimony suggests that Jackson's death may have been caused by a seizure, rather than by the gunshot wounds. Thus, Jenkins contends that the evidence was insufficient to support his convictions. We disagree with Jenkins' argument and the conclusion reached by the Court of Appeals.

When a defendant challenges on appeal the sufficiency of the evidence to sustain his convictions, it is the appellate court's duty to examine the evidence that tends to support the convictions and to permit the convictions to stand unless they are plainly wrong or without evidentiary support. Code § 8.01-

5

680; Tyler v. Commonwealth, 254 Va. 162, 165-66, 487 S.E.2d 221, 223 (1997); Goins v. Commonwealth, 251 Va. 442, 466, 470 S.E.2d 114, 130, cert. denied, 519 U.S. ___, 117 S.Ct. 222 (1996). If there is evidence to support the convictions, the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial. Tyler, 254 Va. at 165-66, 487 S.E.2d at 223; Cable v. Commonwealth, 243 Va. 236, 239, 415 S.E.2d 218, 220 (1992); Avent v. Commonwealth, 209 Va. 474, 477, 164 S.E.2d 655, 657 (1968).

Upon review, the appellate court must examine the evidence and all inferences reasonably deducible therefrom in the light most favorable to the Commonwealth, the prevailing party in the trial court. Tyler, 254 Va. at 165-66, 487 S.E.2d at 223; Goins, 251 Va. at 466, 470 S.E.2d at 130; Sheppard v. Commonwealth, 250 Va. 379, 387, 464 S.E.2d 131, 136 (1995), cert. denied, 517 U.S. 1110 (1996). All evidence properly admitted at the trial is subject to this review. See Tyler, 254 Va. at 165-66, 487 S.E.2d at 223; Carter v. Nelms, 204 Va. 338, 341, 131 S.E.2d 401, 403 (1963).

When a defendant has inflicted wounds upon a victim that result in an affliction or a disease, the defendant is criminally responsible for the victim's death from that affliction or disease if the wounds caused the death indirectly

6

through a chain of natural effects and causes.  Spain v. Commonwealth, 7 Va. App. 385, 394-95, 373 S.E.2d 728, 733 (1988); see Gallimore, 246 Va. at 447, 436 S.E.2d at 425; Waller v. Commonwealth, 178 Va. 294, 307, 16 S.E.2d 808, 813 (1941). An intervening event, even if a cause of the death, does not exempt the defendant from liability if that event was put into operation by the defendant's initial criminal acts.  Gallimore, 246 Va. at 447, 436 S.E.2d at 425; see Coleman v. Blankenship Oil Corp., 221 Va. 124, 131, 267 S.E.2d 143, 147 (1980); Baxley v. Fischer, 204 Va. 792, 798, 134 S.E.2d 291, 295 (1964).

Here, the evidence showed that Jackson, the victim, was in good health prior to being shot by Jenkins.  Dr. Preswalla testified that Jackson "died as a result of [the] aspiration following the gunshot wound to the abdomen."  Moreover, the handwritten notation on the discharge summary, introduced into evidence by Jenkins, stated that "[m]any factors contributed to [Jackson's] death but all were [the] result of Gun Shot wound." This evidence plainly supports the jury's finding that Jackson died as a result of the gunshot wounds inflicted by Jenkins. Thus, the evidence was sufficient to prove the required causal connection between Jenkins' acts and the victim's death.  See Gallimore, 246 Va. at 447, 436 S.E.2d at 425.

We find no merit in Jenkins' argument that the handwritten notation on the discharge summary was not competent evidence in

7

this case.  When Jenkins' counsel offered the document into evidence, he did not request that the handwritten notation be excluded from the proffered exhibit.  Thus, as the proponent of the discharge summary exhibit which was received in evidence, Jenkins has waived any later objection to its consideration by the trier of fact.  See Rule 5:25; Frye v. Commonwealth, 231 Va. 370, 386, 345 S.E.2d 267, 279 (1986); Moore v. Commonwealth, 211 Va. 569, 570, 179 S.E.2d 458, 460 (1971).

Since the handwritten notation on the discharge summary was received without objection as evidence in the case, the Court of Appeals erred in disregarding that portion of the exhibit in reviewing the sufficiency of the evidence to support Jenkins' convictions.  A reviewing court must consider all evidence properly admitted at trial in determining the sufficiency of the evidence, not merely the evidence that the reviewing court considers most trustworthy.  See Tyler, 254 Va. at 165-66, 487 S.E.2d at 223; Avent, 209 Va. at 477, 164 S.E.2d at 657; Nelms, 204 Va. at 341, 131 S.E.2d at 403.

For these reasons, we will reverse the Court of Appeals' judgment and reinstate Jenkins' convictions in accordance with the trial court's judgment order.

Reversed and final judgment.