PRESENT: Lemons, C.J., Goodwyn, Powell, Kelsey, and McCullough, JJ., and Lacy and Millette, S.JJ.

CAROLYN A. DORMAN, ET AL.

v. Record No. 151088

STATE INDUSTRIES, INC.

OPINION BY
JUSTICE CLEO E. POWELL
June 16, 2016

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Walter W. Stout, III, Judge Designate

In this products liability action filed in 2011 and seeking over 24 million dollars in damages, Carolyn Dorman, Elizabeth Burgin, Nichole Howarth, and Kristin Julia (collectively "appellants") appeal from a judgment of the Circuit Court of the City of Richmond ("trial court") finding State Industries, Inc. ("State") not liable for appellants' breach of warranty and negligence claims. On appeal, appellants argue the trial court erred in allowing State to present certain evidence and in granting Jury Instruction 22.

## I. BACKGROUND

On August 17, 2007, appellants moved into 1306-F Henry Lane ("the Apartment"), a unit in Collegiate Suites Apartments ("CSA") in the Town of Blacksburg ("Town"). Two days later, Kenneth Compton, a senior service technician with Atmos Energy Corporation, measured high levels of carbon monoxide at the front door of the Apartment. After receiving no answer from the occupants, he entered the Apartment and found the appellants unconscious in their bedrooms.

Five days after the incident, the town building official Katherine Cook, Town code official Jeffrey Garst, and John Mann, a mechanical engineer in heating and air conditioning design, were present at the Apartment for testing of the atmospheric-vented gas fired hot water heater ("atmospheric heater") manufactured by State. Cook testified they were able to recreate

the "back draft and carbon monoxide" conditions of August 19, only when "the water heater was running, all the doors to the bedrooms were closed . . . [and] [w]hen the air conditioning was running." The atmospheric heater was connected to the air handler of the central air conditioning unit that was also manufactured by State.[1]

Mann testified the temperature and pressure release valve ("T&P valve") was rated to open at 210 degrees to relieve the pressure in the atmospheric heater, but sediment on the T&P valve's sensor caused it to open at 126 degrees. Thus, water was continuously draining out of the atmospheric heater causing a continuous flow of fresh water to enter it, resulting in the gas burner continuously firing to heat the water. Testing revealed there was insufficient combustion air, the fresh air that feeds the fire on a gas-burning appliance, in the Apartment for the atmospheric heater to vent properly, thus it generated carbon monoxide, and, because it was continuously firing on August 19, it generated toxic levels of carbon monoxide. Mann testified it was the installer's responsibility to make sure that the atmospheric heater was installed pursuant to the installation instructions and the local Town codes. Cook testified that the structural and architectural notes for CSA specified electric water heaters were to be installed in the apartments and no changes from the approved plans had ever been submitted to the Town for review and approval of the switch to atmospheric heaters.

Appellants' expert, Randy Bicknese, is a mechanical project engineer and is familiar with atmospheric heaters through his experience as a fire and explosions investigator. Bicknese opined that the Apartment had an adequate volume of combustion air for the atmospheric heater, but the problem was "the sensitivity of the design of the water heater to slight changes in pressure within the building" primarily caused by "[t]he operation of the Apollo air handler."

---

[1] This set up was part of State's Apollo Hydroheat system.

Other factors that reduced the available combustion air included the weather, operation of the exhaust fans in the four bathrooms, and the airflow characteristics of the Apartment. Moreover, open spaces on the draft hood of the atmospheric heater permitted carbon monoxide to be emitted into the living space. Bicknese opined that the atmospheric heater was "unreasonably dangerous" and unfit for the purpose for which it was marketed because of the design defect of the draft hood and its susceptibility to atmospheric conditions, both interior and exterior, which prevented it from venting properly.

State asked Bicknese on cross-examination about his opinions regarding the property owners. Appellants objected and argued that State was raising the "empty chair" defense. The trial court ruled State could explore this area "until it's proven, but the court makes a decision as to whether it supersedes" and it could not make "that decision at this time." Bicknese then testified that he previously opined in his disclosure that the atmospheric heater was improperly installed and that the owners of CSA, CSB III, LLC ("CSB"), were responsible for the improper installation. He outlined the various code violations in his disclosure and faulted CSB and CSA's management company, University Management, Inc. ("UMI"), for failing to comply with those codes. Bicknese also opined that Atmos "was knowingly negligent and a proximate cause of [appellants'] carbon monoxide poisoning" in making the gas connection to the atmospheric heater. Bicknese further testified that an electric water heater and three safer power vented gas water heaters were available when the Apartment was built in 1999 and somebody, other than State, decided to install the atmospheric heater.

The trial court denied State's motion to strike appellants' claim that there was a design defect caused by the opening at the top of the atmospheric heater that allowed carbon monoxide

3

to come out, but granted the motion to strike as to appellants' claims of failure to warn and defects in the T&P valve.

Sterling Nichols, one of the owners of CSA, testified that the architectural plans called for electric hot water heaters to be installed in each apartment. The first three buildings used electric water heaters but atmospheric water heaters were installed in the "stage 4" building, which included the Apartment. State was not consulted concerning this change; instead, Nichols relied on the opinions of the project's heating and air conditioning contractor, and a gas company representative.

Allen Eberhardt, State's expert in mechanical engineering with expertise in evaluating gas appliances as the source of carbon monoxide, was present at the testing of the atmospheric heater on August 24, five days after appellants were injured. He testified the atmospheric heater operated normally producing no carbon monoxide until the bedroom doors were shut and the air handler was turned on, at which time it starting producing carbon monoxide. At that point, the air stopped circulating through the ductwork, the air pressure in the bedrooms increased forming "positive pressure," and the air pressure in the rest of the Apartment decreased forming "negative pressure." The negative pressure tried to balance itself by pulling air from the flue that connected the draft hood of the atmospheric heater to the outside. At that point, the gas burner no longer had sufficient air for clean combustion and began producing carbon monoxide.

Eberhardt testified this condition had not previously occurred because the space under the closed bedroom doors allowed sufficient air return to the atmospheric heater. Then, nine days before the incident, new carpet was installed in the Apartment, which reduced the space under the doors and created the negative pressure. The UMI employee who approved the new carpet

4

installation testified that no analysis was done to determine the effect of the carpet on the airflow in the Apartment.

Eberhardt testified the manual for the atmospheric heater provided warnings with regard to air return and inadequate combustion air. The manual stated that the atmospheric heater had to be installed according to the instructions and discussed different ways to increase air volume by creating openings to the crawlspace or attic in order to bring more air into tightly sealed newer homes. Eberhardt opined that the installation of the atmospheric heater in the Apartment was inappropriate because there was no return of air from the bedrooms when the bedroom doors were closed and when the space under the closed bedroom doors was reduced by the new carpet.

Charles Adams, State's expert in mechanical engineering with particular expertise in the design, operation, and manufacture of gas-fired water heaters, testified he was chief engineer and Director of Government Affairs for A. O. Smith Corporation ("Smith"), a manufacturer of water heaters and boilers that had "around 500 engineers worldwide."[2] Adams testified that the installation manual for the atmospheric heater required it to be installed in compliance with the American National Standards Institute ("ANSI") and the National Fire Protection Association ("NFPA"), two installation codes that specified how return air ductwork should be installed. The codes required that when installing the atmospheric heater with an air handler, provisions had to be made in order to import combustion air from outside the room. Adams testified "the incorrectly-installed air handler was stealing the air needed for combustion," as the one-half horsepower blower motor on the air handler overcame the ability of the warm air generated by the gas burner in the atmospheric heater to naturally rise through the ceiling vent. Adams also testified, "there's about 60 million atmospheric gas water heaters operating in the United States."

---

[2] In 2001, Smith purchased State when Adams was vice president of engineering.

He opined that the opening at the draft hood of the atmospheric heater did not render it unreasonably dangerous at the time it was installed or at any other time.

At the conclusion of the evidence, appellants renewed their previously filed motion seeking to exclude State's "empty chair" evidence, arguing that there was sufficient evidence for the jury to consider that State's conduct was a proximate cause of appellants' injuries. State argued that the issue was for the jury to decide as State's evidence demonstrated CSB was responsible for the decision to install the atmospheric heater and the installers failed to determine the effect of the pressure conditions on the combustion air. The trial court overruled the motion.

The trial court granted State's Proposed Jury Instruction 22, which stated: "A superseding cause is an independent event, not reasonably foreseeable, that completely breaks the connection between the defendant's negligent act and the plaintiff's injury. A superseding cause breaks the chain of events so that the defendant's original negligent act is not a proximate cause of the plaintiffs' injury in the slightest degree." Appellants objected to the instruction, arguing that unless the trial court believed that it could say, "that State was not negligent even in the slightest degree," then State was not entitled to a superseding cause instruction. The trial court ruled that the issue was whether State was negligent "at the start," and if State was not negligent, "the case is over." The trial court further ruled that if there was negligence on State's part, "then the jury may deserve some explanation of why others aren't here."

In closing argument, State argued that Smith employs over "500 engineers who do nothing other than make sure that the products they manufacture are safe." Appellants objected that State was making "an inappropriate attack" on Bicknese's credibility. Appellants argued State should not be allowed to argue that millions of its atmospheric heaters were in general use,

6

that an atmospheric heater had never before flooded an apartment with carbon monoxide or that the atmospheric heater had "a safe design record."

State argued "the issue [was] whether or not the design and use of this design" in the industry was admissible and evidence of custom and usage was relevant in order to properly assess the opinion of appellants' expert, Bicknese, that every atmospheric heater was defective. The trial court ruled that compliance with regulation statutes or industry standards may be admissible but was not dispositive. The dispositive issue was whether the product was reasonably safe for its intended purpose. The trial court ruled State could present evidence of prior incidents "as to the custom and usage based on design." The trial court overruled appellants' objection to State's closing argument, ruling that Adams testified the Smith engineers "do testing, it's part of making the product safe" and appellants could respond to the argument in rebuttal.

The jury returned a verdict for State on all claims. The trial court then denied appellants' motion to set aside the verdict and motion for new trials. This appeal followed.

## II. ANALYSIS

On appeal, "we review the circuit court's evidentiary rulings using an abuse of discretion standard, [and] we will reverse the circuit court's decision to admit evidence only upon a finding of abuse of that discretion." Hyundai Motor Co. v. Duncan, 289 Va. 147, 155, 766 S.E.2d 893, 897 (2015).

### A. Absence of Other Injuries Evidence

Appellants argue that the trial court erred in admitting evidence presented by State of the numbers of atmospheric heaters sold, their safety record, and the absence of prior injuries associated with the atmospheric heaters.

7

We have previously noted in a food poisoning case that "evidence of the absence of other injuries is not admissible in a negligence action when timely objection to it is made." Goins v. Wendy's Int'l, Inc., 242 Va. 333, 335, 410 S.E.2d 635, 636 (1991). State argues that such evidence may be admissible in a products liability case, but that at any rate, no such evidence was offered in this case. We agree with State's second argument and, accordingly, we do not reach the question of whether and under what circumstances evidence of absence of injuries might be admissible in a products liability case.

Adams testified with regard to the number of atmospheric heaters sold, that there are "about 60 million atmospheric gas water heaters operating in the United States." This statement was neither couched in terms of a safety record nor linked to any evidence of prior injuries. Instead, it was merely a statement of the number of atmospheric heaters in use.

> Code § 8.2-314 provides that, in all contracts for the sale of goods by a merchant, a warranty is implied that the goods will be merchantable. To be merchantable, the goods must be such as would "pass without objection in the trade" and as "are fit for the ordinary purposes for which such goods are used." Code § 8.2-314(2)(a),(c). The first phrase concerns whether a "significant segment of the buying public" would object to buying the goods, while the second phrase concerns whether the goods are "reasonably capable of performing their ordinary functions." Federal Signal Corp. v. Safety Factors, Inc., 886 P.2d 172, 180 (Wash. 1994).

Bayliner Marine Corp. v. Crow, 257 Va. 121, 128, 509 S.E.2d 499, 503 (1999). Not only did appellants not object to this testimony at trial, the evidence was relevant to the main issue before the jury on whether the atmospheric heater breached an implied warranty of merchantability and whether or not it was unreasonably dangerous. The number of atmospheric heaters sold was directly related to the issue of whether the atmospheric heater would "pass without objection in the trade" as demonstrated by evidence as to whether a "significant segment of the buying public" would object to buying the product. Accordingly, the trial court did not abuse its

8

discretion in allowing the admission of the evidence regarding how many atmospheric heaters were in use.

## B. Superseding Cause Evidence

Appellants argue that the trial court erred in allowing evidence of superseding causation because another cause of injury or death only breaks the chain of proximate causation if it so completely supersedes the defendant's wrongdoing that the wrongdoing no longer contributes in the slightest degree to the cause of death or injury. Appellants further argue that State's negligence could never be superseded because the unsealed exhaust of the atmospheric heater is the only necessary physical antecedent of the carbon monoxide exposure as a matter of law. In other words, without the open exhaust, there could be no exposure.

State responds that appellants conflate the admissibility of the evidence with the sufficiency of that evidence. That, indeed, the trial court could not rule as to whether the evidence was sufficient to establish a superseding cause without first admitting it. State also argues that appellants misunderstand the law, that contrary to appellants' position, it does not have to prove that it was not negligent in order for the evidence relating to superseding causation to be admissible. Finally, State argues that even if it was negligent, it presented ample evidence that other factors such as improper installation and lack of maintenance superseded any negligence in manufacturing.

"Issues of negligence and proximate causation ordinarily are questions of fact for the jury's determination. A court decides these issues only when reasonable persons could not differ." Atkinson v. Scheer, 256 Va. 448, 453-54, 508 S.E.2d 68, 71 (1998) (quoting Brown v.

9

Koulizakis, 229 Va. 524, 531, 331 S.E.2d 440, 445 (1985)).[3] "The proximate cause of an event is that act or omission which, in natural and continuing sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." Kellermann v. McDonough, 278 Va. 478, 493, 684 S.E.2d 786, 793 (2009) (internal quotation marks and citations omitted).

Under Virginia law, "the extraordinary manner in which harm occurs may prevent the primary actor's conduct from being the proximate cause of an event." Banks v. City of Richmond, 232 Va. 130, 137, 348 S.E.2d 280, 283 (1986). Thus, even if the primary actor is the "but for" cause of an injury, an action that is so highly extraordinary as to be unforeseeable may serve to cut off legal causation. Id. at 136, 348 S.E.2d at 283 ("[The plaintiff] complains that had the gas been cut off at the meter there would have been no explosion. Yet, that simplistic 'but for' argument does not resolve the proximate cause question."). In other words, even if a defendant is in fact "negligent," and his "negligence created a situation of potential danger," if an unforeseeable "independent intervening act" ultimately "brought about the accident," then "the situation of danger created by the defendant's negligence [becomes] merely a circumstance of the accident but not a proximate cause" of the accident. Chereskin v. Turkoglu, 235 Va. 448,

---

[3] The analysis of a superseding cause is distinct from that of joint and several liability. This is the distinction drawn in Virginia law in not allowing the "empty chair defense." Without question the law is that a litigant "can not be exonerated by urging and showing the negligence" of other parties or nonparties. Von Roy v. Whitescarver, 197 Va. 384, 393, 89 S.E.2d 346, 352 (1955). Indeed, "[t]o show that other causes concurred in producing, or contributed to the result is no defense to an action for negligence." Carolina, Clinchfield & Ohio Ry. Co. v. Hill, 119 Va. 416, 421, 89 S.E.2d 902, 904 (1916). Superseding cause, however, is different because "a superseding cause of an injury constitutes a new effective cause and operates independently of any other act, making it and it only the proximate cause of injury." Kellermann v. McDonough, 278 Va. 478, 493-94, 684 S.E.2d 786, 794 (2009) (internal quotation marks and citations omitted).

10

450, 369 S.E.2d 161, 162 (1988) (recognizing this as an "inartfully" expressed but nonetheless "correct principle of law").

Indeed, we have recognized that a defendant may be negligent and still not be liable for the resulting injury. This occurs when there is a sufficient intervening act.

> In order to relieve a defendant of liability for his negligent act, the negligence intervening between the defendant's negligent act and the injury must so entirely supersede the operation of the defendant's negligence that it alone, without any contributing negligence by the defendant in the slightest degree, causes the injury. Thus, a superseding cause of an injury "constitutes a new effective cause and operates independently of any other act, making it and it only the proximate cause of injury." Maroulis v. Elliott, 207 Va. 503, 511, 151 S.E.2d 339, 345 (1966).

Atkinson, 256 Va. at 454, 508 S.E.2d at 71-72 (quoting Jenkins v. Payne, 251 Va. 122, 128-29, 465 S.E.2d 795, 799 (1996)). We have also recognized that an intervening cause is not a superseding cause if it was put into operation by the defendant's wrongful act or omission. Jefferson Hosp., Inc. v. Van Lear, 186 Va. 74, 81, 41 S.E.2d 441, 444 (1947).

"The manufacturer is not an insurer and is not required to design and market an accident-proof product. The manufacturer is under a duty to exercise ordinary care to design a product that is reasonably safe for the purpose for which it is intended." Turner v. Manning, Maxwell & Moore, Inc., 216 Va. 245, 251, 217 S.E.2d 863, 868 (1975). "[A]n implied warranty of general merchantability [arises] when the product is being used in the manner intended for it. The implied warranty does not apply when the product is being used in a manner or for a purpose for which it was not intended." Id. at 252, 217 S.E.2d at 869.

The appellants presented evidence in the form of testimony from Bicknese that the apartment had an adequate volume of combustion air but the problem was "the sensitivity of the design of the water heater to slight changes in pressure within the building." According to

11

Bicknese, the atmospheric heater was "unreasonably dangerous" and unfit for the purpose for which it was intended because of design flaws that prevented it from venting properly.

Conversely, State's expert opined that the opening at the draft hood of the atmospheric heater did not render it unreasonably dangerous at the time it was manufactured and that the atmospheric heater operated appropriately until new carpet was installed in the Apartment which reduced the airflow when the bedroom doors were closed. His opinion was that there might have been more than one proximate cause, such as improper installation and inadequate maintenance, but that design was not a proximate cause. State's position was that there was no negligence on its part, but, even if there was, the evidence indicated that any danger posed by the design could have been completely alleviated by proper installation and maintenance.

State was entitled to present a defense showing that its product was not defective. We have previously recognized the importance of evidence as to other potential causes in products liability cases. See Turner, 216 Va. at 249-50, 217 S.E.2d at 867 (approving receipt of evidence that a hoist was being misused at time of accident); Jeld-Wen, Inc. v. Gamble, 256 Va. 144, 149-50, 501 S.E.2d 393, 397 (1998) (noting controlling effect of evidence of possible product misuse); Besser Co. v. Hansen, 243 Va. 267, 277-78, 415 S.E.2d 138, 144 (1992) (legal relevance of evidence of product misuse); Logan v. Montgomery Ward & Co., 216 Va. 425, 428, 219 S.E.2d 685, 687 (1975) (noting that the evidence did not eliminate the possibility that the blame could have attached to some party other than the manufacturer such as the installer). From the evidence presented, the jury could have found that (1) the building design called for an electric water heater, but an atmospheric heater was installed instead; (2) no inspection was performed and had one been performed, the atmospheric heater would not have passed inspection because there was no system designed for the free circulation of air; (3) the

12

installation did not comply with the national Fire Gas Code; and (4) the T&P valve malfunctioned due to non-maintenance.

Because State was entitled to present a defense and because there was evidence from which the jury could have found that State's negligence, if it existed, was superseded, the trial court did not abuse its discretion in admitting State's evidence of superseding causation.

## C. Jury Instruction 22

Finally, appellants argue that the trial court erred in giving Jury Instruction 22 because it misstated the law and the instruction was not supported by State's evidence. Their argument is two-fold: (1) that Jury Instruction 22 was confusing, and (2) that it lacked an essential concept relating to the burden of proof.[4]

> When we review the content of jury instructions, our sole responsibility . . . is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises. Whether the content of the instruction is an accurate statement of the relevant legal principles is a question of law that, like all questions of law, we review de novo.

Cain v. Lee, __ Va. __, __, 772 S.E.2d 894, 896 (2015) (internal quotation marks and citations omitted).

Jury Instruction 22 stated: "A superseding cause is an independent event, not reasonably foreseeable, that completely breaks the connection between the defendant's negligent act and the plaintiff's injury. A superseding cause breaks the chain of events so that the defendant's original negligent act is not a proximate cause of the plaintiffs' injury in the slightest degree." In Williams v. Cong Le, 276 Va. 161, 662 S.E.2d 73 (2008), we endorsed a jury instruction containing substantively the exact language given here; therefore, the instruction is a correct

---

[4] Appellants' additional arguments on brief detailing what the instruction should have contained were not raised before the trial court, and accordingly are procedurally defaulted by operation of Rule 5:25. We decline to apply the ends of justice exception in that Rule to enable review of these arguments on appeal.

statement of law.[5]  See id. at 166-67, 662 S.E.2d at 76-77.  In that case, we reversed the trial court's judgment because the evidence presented did not support giving a superseding cause jury instruction.

"[J]ury instructions are proper only if supported by the evidence, and more than a scintilla of evidence is required."  Lawlor v. Commonwealth, 285 Va. 187, 228, 738 S.E.2d 847, 870-71 (2013) (quotation marks and citations omitted).  Here, as discussed supra, there was "more than a scintilla of evidence" to support giving a superseding cause jury instruction.  Id. The trial court did not err in granting Jury Instruction 22.

Finally, appellants argue that Jury Instruction 22 should not have been given because it did not instruct the jury that the burden of proof is on a defendant asserting a superseding cause. Appellants did not propose any additional jury instructions to address the burden of proof for superseding cause.  Because appellants failed to proffer a burden of proof jury instruction relating to superseding causation, we are precluded from addressing the merits of this portion of appellants' second assignment.  Accordingly, this portion of the jury instruction argument is waived on appeal pursuant to Rule 5:25.  See Cherrix v. Commonwealth, 257 Va. 292, 311, 513 S.E.2d 642, 654 (1999) (a party's "failure to proffer" a correcting or proposed alternative or supplemental "instruction . . . precludes us from addressing the merits of this assignment of error").

### III.  CONCLUSION

For the foregoing reasons, we will affirm the judgment of the trial court.

Affirmed.

---

[5] As noted in the appellants' opening brief, Jury Instruction 22 is the definition of superseding cause appearing in the Virginia Model Jury Instructions.  See 1 Virginia Model Jury Instructions – Civil, No. 5.010 (2014).

14

CHIEF JUSTICE LEMONS, with whom SENIOR JUSTICE MILLETTE joins, dissenting in part.

In my view, the trial court erred in giving Jury Instruction 22; consequently, the judgment should be reversed and the case remanded for a new trial.

"The proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." Williams v. Cong Le, 276 Va. 161, 167, 662 S.E.2d 73, 77 (2008) (internal quotation marks and citations omitted). There may be more than one proximate cause of an event. Id. A subsequent proximate cause may or may not relieve a defendant of liability for his negligence. Id. "In order to relieve a defendant of liability for his negligent act, the negligence intervening between the defendant's negligent act and the injury must so entirely supersede the operation of the defendant's negligence that it alone, without any contributing negligence by the defendant in the slightest degree, causes the injury." Id. (internal quotation marks and citations omitted) (emphasis added). It is well established in Virginia that "a superseding cause of an injury constitutes a new effective cause and operates independently of any other act, making it and it only the proximate cause of injury." Kellermann v. McDonough, 278 Va. 478, 493-94, 684 S.E.2d 786, 794 (2009) (internal quotation marks and citations omitted). "To be a superseding cause, whether intelligent or not, it must so entirely supersede the operation of the defendant's negligence, that it alone, without the defendant's contributing negligence thereto in the slightest degree, produces the injury." City of Richmond v. Gay, 103 Va. 320, 324, 49 S.E. 482, 483 (1905). Therefore, "a superseding cause is a new cause of a plaintiff's injury, becoming the only proximate cause of that injury." Williams v. Joynes, 278 Va. 57, 63, 677 S.E.2d 261, 264 (internal citations omitted).

15

We have had numerous opportunities to consider cases involving negligence and allegations of superseding causation. In <u>Williams v. Cong Le</u>, the plaintiff alleged that Dr. Le, a radiologist, had breached the standard of care by failing to make "direct communication with the physician who ordered the study or with one of their physicians who was covering or a nurse or the patient directly" so that the treating physician could initiate prompt treatment. 276 Va. at 165-66, 662 S.E.2d at 76. Although Dr. Le failed to make this direct communication, the treating physician nonetheless ordered the results of the diagnostic study, and the day after the study was performed the results were received by the treating physician's clinical assistant and the treating physician was notified that the results had arrived and were ready for his review. <u>Id.</u> at 165-66, 662 S.E.2d at 75-76. A review of the report would have demonstrated that the patient was suffering from deep vein thrombosis. However, the treating physician did not review the report until almost two weeks later, after the patient died from a pulmonary embolism. Dr. Le argued that even if he was negligent for not making direct contact with the treating physician, staff, or patient, that the subsequent negligence by the treating physician in failing to check the diagnostic report broke the chain of events between Dr. Le's negligence and the patient's subsequent death. <u>Id.</u> at 166-67, 662 S.E.2d at 77. We disagreed. Instead, we held that the trial court erred in granting a jury instruction on superseding causation, because it could not be said "that Dr. Le's alleged negligence was not contributing 'in the slightest degree' to the death of Williams." <u>Id.</u> at 167, 662 S.E.2d at 77.

In <u>Kellermann</u> we reversed a trial court's decision to sustain a demurrer. 278 Va. at 495, 684 S.E.2d at 794. In doing so, we had to determine whether the McDonoughs could be held liable in tort for the wrongful death of Jaimee Kellermann, or whether the acts of a third party were the sole proximate cause of Jaimee's death. <u>Id.</u> at 493, 684 S.E.2d at 793. Jaimee

16

Kellerman, a 14-year-old girl, was staying with the McDonoughs when she was killed in an automobile accident. The driver of the vehicle was a 17-year-old boy, who was traveling at least 77 miles per hour at the time of the accident. Id. at 486, 684 S.E.2d at 789. Before her father entrusted Jaimee into the care of Paula McDonough for the weekend, he made her promise that Jaimee would not be allowed to ride in a car with any young, male drivers. Id. at 484-85, 684 S.E.2d at 789. Paula McDonough agreed to that condition, but then later allowed Jaimee to ride in a vehicle driven by a 17-year-old boy. Id. We held that, under these facts, a jury could find that the McDonoughs breached their duty of care and supervision of Jaimee, that their breaches of duty constituted a proximate cause of Jaimee's death, and that the 17-year-old driver's acts did not constitute a superseding act between the McDonoughs' alleged negligence and Jaimee's death. Id. at 494, 684 S.E.2d at 794.

In Williams v. Joynes, a legal malpractice case, we reversed a trial court's grant of summary judgment. The defendant attorney had failed to file the plaintiff's law suit within Virginia's two-year statute of limitations, but advised the plaintiff, Williams, that he might still be able to file suit in Maryland. Williams failed to file a suit in Maryland, and then filed a legal malpractice case against the attorney. The trial court determined that the plaintiff's failure to file a lawsuit in Maryland was a superseding cause that relieved the defendant attorneys from liability for the plaintiff's loss of his personal injury action. 287 Va. at 61, 677 S.E.2d at 263. We disagreed. We held that Williams' failure to file a Maryland suit was not a superseding event severing the link of proximate causation between the attorney's negligence and the resulting harm suffered by Williams. Id. at 63-64, 677 S.E.2d at 265. It was the attorney's negligent failure to file in Virginia that set in motion the need for Williams to even consider filing a Maryland lawsuit. Id.

These cases all illustrate examples of intervening causation. In all of these cases, there was an original act of negligence by the defendant. There were then subsequent, intervening actions that contributed to the ultimate injury suffered by the plaintiff. However, none of these intervening acts so entirely superseded the operation of the defendant's negligence that these intervening acts alone, without the defendant's contributing negligence thereto in the slightest degree, produced the injury. Gay, 103 Va. at 324, 49 S.E. at 483.

The majority cites Banks v. City of Richmond, 232 Va. 130, 348 S.E.2d 283 (1986), and Chereskin v. Turkoglu, 235 Va. 448, 369 S.E.2d 161 (1988), in its discussion of superseding causation. Those two cases provide examples of situations where there was superseding causation. In Banks, the plaintiff sued for damages resulting from a natural gas explosion in her apartment in Richmond. 232 Va. at 131, 348 S.E.2d at 280. The plaintiff alleged that the City of Richmond was negligent for failing to make repairs of defective gas appliances and pipes. Id. The trial court held, however, that the City's negligence did not proximately cause the plaintiff's injuries. The trial court struck the plaintiff's evidence, apparently concluding that the proximate cause of the explosion was the action of a repairman, who was investigating the smell of gas, and lit a cigarette lighter to look inside the oven. Id. at 134, 348 S.E.2d at 282. We affirmed the trial court's judgment, holding that the repairman's conduct was "an intervening independent act that affected and was the immediate cause of the injury." Id. at 136, 348 S.E.2d at 283.

In Chereskin, the defendant police officer was driving his vehicle when he struck the plaintiff, who was walking in a parking lot. 235 Va. at 449, 369 S.E.2d at 161. The plaintiff alleged the defendant was negligent for striking him. However, at trial, there was evidence presented that one of the plaintiff's companions actually picked him up and threw him in front of the moving vehicle. Id. at 449-50, 369 S.E.2d at 162. The defendant requested a jury instruction

18

on superseding causation, which the trial court denied. Id. at 450, 369 S.E.2d at 162. In a brief per curiam opinion, we reversed that ruling, in light of the evidence of the third party's action in throwing the plaintiff in front of the moving vehicle. Id. Just as in Banks, the unforeseeable conduct – a third-party throwing the plaintiff in front of the defendant's moving vehicle – was the required evidentiary support for granting the instruction and the trial court erred in its refusal to do so.

The actions by the repairman in Banks and the third party companion in Chereskin were extraordinary unforeseeable actions that served to break the chain of causation. Such unforseeability is not present in this case. Is it unforeseeable that routine maintenance might be negligently performed? Is it unforeseeable that a landlord or a tenant might install carpet in an apartment? I think not. Simply stated, there was not a scintilla of evidence to support Jury Instruction 22 because the intervening causes involved in the present case were within the realm of foreseeability. The facts of this case are akin to the ones described in Cong Le, Kellermann, and Joynes.

In this case, the appellants' expert testified that State's design of the water heater was defective because the open-exhaust design of the heater allowed carbon monoxide to escape the exhaust vent. The evidence also proved that State designed and sold other water heaters with closed exhaust systems that would not allow carbon monoxide or other gases to escape into living spaces. Because the closed-exhaust design was a technologically and economically feasible alternative, appellants argued that State was negligent in continuing to manufacture and sell open-exhaust water heaters. State presented evidence that the water heater in appellants' apartment had been both improperly installed and improperly maintained. There was also evidence presented that the recent installation of new carpet had affected the air flow in the

19

apartment. State argued that these factors superseded any alleged negligence on its part in the manufacture and design of the water heater. However, there is no dispute that the carbon monoxide was able to enter the apartment because it escaped from the open exhaust feature of the water heater. State's own expert admitted that the backdraft and build-up of carbon monoxide would not have occurred with a closed exhaust design or vent that pulled the gases out of the apartment.

A litigant is entitled to a jury instruction supporting his or her theory of the case if sufficient evidence is introduced to support that theory and if the instructions correctly state the law. Holmes v. Levine, 273 Va. 150, 159, 639 S.E.2d 235, 239 (2007). The evidence introduced in support of a requested instruction must amount to more than a scintilla. Id. Accordingly, a jury instruction on superseding causation would only be proper in this case if reasonable persons could conclude from the evidence, and reasonable inferences therefrom, that improper installation and maintenance of the water heater, along with the installation of new carpet, "without any contributing negligence" by State in the design of the water heater, "in the slightest degree," caused the appellants' injuries. See Cong Le, 276 Va. at 167, 662 S.E.2d at 77.

In this case, however, even if the improper installation and maintenance, in addition to the new carpet, contributed to the production of carbon monoxide within the water heater, these factors did not cause the release of the carbon monoxide into the apartment. The open exhaust design of the water heater is what allowed the carbon monoxide to enter the apartment where appellants were sleeping. If this water heater had a closed exhaust system, as State's other designs did, carbon monoxide would not have been able to enter the apartment, but rather would have been vented outside. The release of the carbon monoxide into the appellants' apartment while they were sleeping is what caused their injury.

20

The factors identified by State as "superseding" causes are actually "intervening" causes. The alleged improper installation, improper maintenance, and new carpet may have contributed to the chain of events leading to appellants' injuries. But these factors are not superseding causes. Without the original open exhaust design, these factors could not have caused appellants' injuries. None of these factors could have independently caused carbon monoxide to be released into the apartment. And in order to constitute a superseding cause, a factor or action must "operate[] independently of any other act, making it and it only the proximate cause of injury." Kellermann, 278 Va. at 493, 684 S.E.2d at 794. To be a superseding cause, whether intelligent or not, it must so entirely supersede the operation of the defendant's negligence, that it alone, without the defendant's contributing negligence thereto in the slightest degree, produces the injury. Gay, 103 Va. at 324, 49 S.E. at 483.

State maintained that it was not negligent in the design of the water heater. Had the case gone to the jury only on an instruction to this effect, I would not author this dissent. However, the jury may have found that State was negligent and excused their negligence based upon a superseding negligence instruction which I believe was erroneously given. On this record, it cannot be said that State's design of an open exhaust, which allowed carbon monoxide to escape the exhaust vent and enter the living space, was not contributing "in the slightest degree" to the appellants' injuries. The trial court therefore erred in granting the superseding causation instruction. Where an instruction has been erroneously submitted to the jury and the record does not reflect whether such instruction formed the basis of the jury's verdict, we must presume that the jury relied on such instruction in making its decision. Cong Le, 276 Va. at 168, 662 S.E.2d at 77. Accordingly, I would reverse the judgment of the trial court and remand the case for a new trial.