COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, Beales and Decker
Argued at Alexandria, Virginia

PUBLISHED

BARRY JUSTIN LEVENSON

OPINION BY
v.        Record No. 1884-16-4                        JUDGE WILLIAM G. PETTY
                                                      DECEMBER 12, 2017

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Brett A. Kassabian, Judge

Alberto Salvado (Salvado, Salvado & Salvado, PC, on brief), for
appellant.

Donald E. Jeffrey, III, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Barry Justin Levenson challenges his conviction of aggravated involuntary manslaughter

in violation of Code § 18.2-36.1.[1]  He contends that the evidence was insufficient to convict him

because the victim's medical treatment decision was a superseding act that caused his death.  We

disagree and affirm.

---

[1] Code § 18.2-36.1 states in relevant part,

> A.  Any person who, as a result of driving under the influence in
> violation of clause (ii), (iii), or (iv) of § 18.2-266 or any local
> ordinance substantially similar thereto unintentionally causes the
> death of another person, shall be guilty of involuntary
> manslaughter.
>
> B.  If, in addition, the conduct of the defendant was so gross,
> wanton and culpable as to show a reckless disregard for human
> life, he shall be guilty of aggravated involuntary manslaughter . . . .

BACKGROUND

In the early morning hours of May 9, 2015, Levenson crashed into the rear of a dump truck that was stopped in a construction zone. Levenson was intoxicated and was exceeding the speed limit. The impact from the crash caused extensive damage to the vehicles and injured both Levenson and his passenger, Devon Martin. Martin was transported to the hospital where he was diagnosed with an injury to the spleen and a blood clot forming on the right iliac artery. The blood flow to Martin's leg was restricted and, according to expert medical testimony, Martin risked irreversible damage and the loss of his leg within five hours. To preserve the leg, Martin's doctor recommended that the blood thinner heparin be administered and that a stent[2] be inserted into the artery. The doctor was aware that the use of heparin could cause life-threatening bleeding from Martin's injured spleen. However, a team of three doctors in consultation formed a plan to deal with the spleen bleed if the situation became life threatening. The use of heparin was recommended because insertion of a stent without it would be substantially riskier. Amputation of the leg was mentioned only as a last option. Martin was asked for consent to proceed with the treatment. At the time he gave consent, he was completely lucid, coherent, and logical. After the heparin was administered, Martin began bleeding in the brain from an injury undetected by an earlier CAT scan. He died as a result of that bleeding. The only issue before us on appeal is whether the

> trial court erred in refusing to strike the evidence on the basis that the evidence was insufficient to prove manslaughter because Martin opted for a discretionary course of treatment, including the use of heparin, there being several alternate [sic] options for care of his injuries which would have insulated him from death, his passing being the product of an intervening and superseding act of embarking on an injurious course of action which caused his demise.

---

[2] A stent is a tube inserted into a blood vessel to keep a blocked passageway open. See Stent, Tabor's Cyclopedic Medical Dictionary (23rd ed. 2017).

Thus, we must resolve whether the crash caused by Levenson was a proximate cause of Martin's death or, as Levenson argues, Martin's consent to the administration of heparin was a superseding cause.

STANDARD OF REVIEW

Generally, negligence and proximate cause are factual findings and thus "are issues for a jury's resolution. They only become questions of law to be determined by a court, when reasonable minds could not differ." Hawkins v. Commonwealth, 64 Va. App. 650, 655, 770 S.E.2d 787, 789 (2015) (quoting Forbes v. Commonwealth, 27 Va. App. 304, 309, 498 S.E.2d 457, 459 (1998)). Further, "the factual findings of [a jury] are not to be disturbed unless they are plainly wrong or are without evidence to support them." Wilkins v. Commonwealth, 292 Va. 2, 7, 786 S.E.2d 156, 159 (2016).

ANALYSIS

"Established principles of proximate causation are applicable in both civil and criminal cases." Brown v. Commonwealth, 278 Va. 523, 529, 685 S.E.2d 43, 46 (2009); Chapman v. Commonwealth, 68 Va. App. 131, 140, 804 S.E.2d 326, 331 (2017). A proximate cause is "an act or omission that, in natural and continuous sequence unbroken by a superseding cause, produces a particular event and without which that event would not have occurred." Brown, 278 Va. at 529, 685 S.E.2d at 46 (quoting Williams v. Joynes, 278 Va. 57, 62, 677 S.E.2d 261, 264 (2009)). "Because an event can have more than one proximate cause, criminal liability can attach to each actor whose conduct is a proximate cause unless the causal chain is broken by a superseding act that becomes the sole cause of the death." Id.

> When a defendant's criminally negligent conduct "put[s] into operation" an intervening cause of a death, the defendant remains criminally responsible for that death. Thus, an intervening cause of such death that is a probable consequence of the defendant's own conduct will not constitute a superseding cause breaking the chain of proximate causation.

- 3 -

Id. (alteration in original) (citations omitted); see also Dorman v. State Indus., 292 Va. 111, 123, 787 S.E.2d 132, 139 (2016) ("In order to relieve a defendant of liability for his negligent act, the negligence intervening between the defendant's negligent act and the injury must so entirely supersede the operation of the defendant's negligence that it alone, without any contributing negligence by the defendant in the slightest degree, causes the injury."). Furthermore, "an intervening cause is not a superseding cause if it was put into operation by the defendant's wrongful act or omission." Dorman, 292 Va. at 123, 787 S.E.2d at 139; see Gallimore v. Commonwealth, 246 Va. 441, 448, 436 S.E.2d 421, 426 (1993) (affirming appellant's involuntary manslaughter conviction where appellant's fabrication of a kidnapping story put into operation a series of events that led to the shooting of the victim by a third party).

Appellate courts in Virginia have reasoned that medical treatment received by a victim is part of the causal chain put into operation by the defendant's wrongful act or omission. In Commonwealth v. Jenkins, 255 Va. 516, 521, 499 S.E.2d 263, 265-66 (1998), the Supreme Court affirmed a murder conviction where the victim died from aspiration of his vomit four days after he was shot. The Court reasoned,

> When a defendant has inflicted wounds upon a victim that result in an affliction or a disease, the defendant is criminally responsible for the victim's death from that affliction or disease if the wounds caused the death indirectly through a chain of natural effects and causes. An intervening event, even if a cause of the death, does not exempt the defendant from liability if that event was put into operation by the defendant's initial criminal acts.

Id. (internal citations omitted). In Hawkins v. Commonwealth, 64 Va. App. 650, 656, 770 S.E.2d 787, 789 (2015), this Court affirmed appellant's conviction of aggravated malicious wounding where abdominal surgery for the bullet wound resulted in a large, permanent scar. This Court reasoned that "the surgery did not relieve appellant from liability or break the chain of the causal connection between the shooting and the scar because the surgery was a reasonably

foreseeable consequence of the shooting." Id.; see also Smith v. Kim, 277 Va. 486, 491-92, 675 S.E.2d 193, 196 (2009) ("The general rule is that if an injured person uses ordinary care in selecting a physician for treatment of his injury, the law regards the aggravation of the injury resulting from the negligent act of the physician as a part of the immediate and direct damages which naturally flow from the original injury." (quoting Corbett v. Clarke, 187 Va. 222, 224-25, 46 S.E.2d 327, 328 (1948))). Simply put, medical treatment is not a superseding cause if the need for the treatment was put into operation by the defendant's wrongful act or omission.[3]

Applying these principles to Levenson's case, we cannot say the trial court erred by denying Levenson's motion to strike the aggravated involuntary manslaughter charge. But for Levenson driving at a high rate of speed through a construction zone while intoxicated, Martin would not have been receiving the heparin and stent treatment to save his leg.[4] Medical treatment was a reasonably foreseeable consequence of the car crash and was put into operation by Levenson's criminal conduct. Levenson is "criminally responsible for [Martin's] death"

---

[3] See also State v. Fox, 810 N.W.2d 888, 894 (Iowa 2011) (holding victim's own decision to remove life support not a superseding cause of death); State v. Murray, 512 N.W.2d 547, 550 (Iowa 1994) (concluding medical decision to remove life support not a superseding cause of death because "the medical decisions that preceded the victim's death were the product of the physical condition in which the victim had been placed as a result of [defendant's act]. Consequently, those medical decisions were part of a chain of events set in motion by the [defendant's] act and leading directly to the victim's death."); State v. Kirby, 39 P.3d 1, 17 (Kan. 2002) (holding physician's negligent medical treatment not a superseding cause); People v. Bailey, 549 N.W.2d 325, 335 (Mich. 1996) ("Defendant cannot exonerate himself from criminal liability by showing that under a different or more skillful treatment the doctor might have saved the life of the deceased and thereby have avoided the natural consequences flowing from the wounds."); Commonwealth v. Green, 383 A.2d 877, 879 (Penn. 1978) ("[E]ven if the wound inflicted by the accused is not in itself mortal and a subsequent event is found to be the immediate cause of death, the accused does not escape legal liability if his act started an unbroken chain of causation leading to the death.").

[4] We note that here there is no suggestion of medical negligence in the prescription of heparin by the doctors or in Martin's consent to the treatment. The medical expert testified that the other treatments, such as amputation of the leg or insertion of a stent without heparin, were not medically advisable. Thus, the fact that Martin consented to the medically recommended treatment, as opposed to other options, is not relevant to our analysis.

because the wounds received from the crash "caused death indirectly through a chain of natural effects and causes." Jenkins, 255 Va. at 521, 499 S.E.2d at 265. Martin's treatment at the hospital was "put into operation" by Levenson's criminally negligent act. The fact that Martin consented to the treatment recommended to him by the team of trauma doctors does not relieve Levenson of liability.

CONCLUSION

Because there was sufficient evidence from which the jury could conclude that Martin's death was proximately caused by Levenson's intoxicated driving, the trial court did not err in denying Levenson's motion to strike. Accordingly, we affirm Levenson's conviction for aggravated involuntary manslaughter.

Affirmed.