UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, O'Brien and Malveaux
Argued at Richmond, Virginia


KARON MARKEE PORTER

v.      Record No. 1761-17-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE MARY GRACE O'BRIEN
DECEMBER 26, 2018


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Timothy J. Hauler, Judge

Kevin E. Calhoun (Charles C. Cosby, Jr., on brief), for appellant.

Liam A. Curry, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


A jury convicted Karon Markee Porter ("appellant") of murder in the commission of a

felony, in violation of Code § 18.2-33.[1]  Appellant contends that the court erred by excluding

evidence that the victim did not die as a result of appellant's actions, but due to negligent medical

care.  He asserts that by excluding the evidence, the court denied his due process right to present a

defense.  Finding no error, we affirm.

BACKGROUND

A.  Commonwealth's Evidence

On the evening of March 29, 2013, while eluding a police officer, appellant drove his SUV

through a red light and hit a vehicle driven by George Van Orden ("the victim").  A witness testified

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The jury also convicted appellant of eluding a law enforcement officer, in violation of
Code § 46.2-817; hit and run, in violation of Code § 46.2-894; and possession of a controlled
substance, in violation of Code § 18.2-250.  Those convictions are not before us.

that appellant was driving "extremely, extremely fast" and estimated his speed at ninety miles per hour. The witness observed that the victim's car "flew up in the air" before crashing back down.

The victim was transported to the Virginia Commonwealth University Medical Center around 7:30 p.m. Despite receiving medical care, he died the following morning at approximately 4:30 a.m. He was seventy-three years old.

At trial, Dr. Jennifer Bowers, the Assistant Chief Medical Examiner for the Commonwealth, testified as an expert in forensic pathology. Dr. Bowers told the jury that the victim died from "blunt force injury to the torso." She based her conclusion on the fact that the victim had been in a car accident and sustained "rib fractures, a pneumothorax, a mediastinal hematoma, and . . . a cardiac effusion also known as a tamponade." Dr. Bowers also noted that the victim had "multiple pelvic fractures."

Dr. Bowers explained that the terms "cardiac tamponade" and "pericardial effusion" are often used interchangeably. She testified that a tamponade occurs when an injury to the heart or surrounding area causes blood to collect between the heart and the pericardial sac and it "implies trauma." The term "effusion," by contrast, implies a "naturally" occurring buildup of fluid around the pericardial sac. She explained that either condition can cause death by interfering with the heart's ability to pump blood to the rest of the body. Dr. Bowers testified that in this case, the fluid buildup around the victim's heart was caused by the blunt force trauma of the motor vehicle collision.

Dr. Bowers also stated that "the rib fractures, the pneumothorax, the pelvic fractures, [and] the pericardial effusion" were "all primary factors in [the victim's] death." She testified that these injuries would make it "difficult for a young 20-year-old to survive . . . let alone someone[] who's

older with multiple co-morbidities."[2] Dr. Bowers could not isolate which of the victim's primary injuries may have been survivable because "they all occurred and all contributed to death."

On cross-examination, Dr. Bowers acknowledged that the victim was not treated for a pericardial effusion or tamponade because "[i]t was not caught in time;" however, she also stated that the victim's condition may not have been stable enough for treatment even if it had been observed, given the extent of his injuries. Dr. Bowers testified that even without a pericardial effusion, the victim was unlikely to have survived. She also explained that she did not perform an autopsy because she "already [had] all the facts" and would not have learned anything further from an autopsy.

### B.  Proffered Testimony Concerning Medical Malpractice

Appellant filed a motion *in limine* to admit expert evidence that medical malpractice contributed to the victim's death. Appellant's expert, Dr. Mark Doloresco, testified at a pre-trial hearing on the motion.

Dr. Doloresco stated that although he was not the treating physician, he reviewed the victim's medical records, and in his opinion, the hospital's failure to treat the pericardial effusion was a breach of the standard of care. According to Dr. Doloresco, proper treatment would have involved inserting a catheter into the pericardial sac and draining the fluid. Dr. Doloresco opined that the lack of treatment caused the victim's death. However, he also agreed that "the pericardial effusion was likely caused by blunt force trauma" and that the victim may have died even if treated properly. He did not disagree with the medical examiner's conclusion "[t]hat blunt force trauma is essentially what killed [the victim]," and he could not testify whether the victim's other blunt force trauma injuries – his flailed chest, rib fractures, pelvic fractures, or pneumothorax – might have

---

[2] The victim's co-morbidities included chronic obstructive pulmonary disease, hypertension, and cholesterol issues.

complicated treatment for the pericardial effusion. After considering the proffered testimony, the court denied appellant's motion to introduce evidence of medical malpractice.

ANALYSIS

A. Standard of Review

"The admissibility of evidence is within the broad discretion of the trial court, and [its] ruling will not be disturbed on appeal in the absence of an abuse of discretion." Abdo v. Commonwealth, 64 Va. App. 468, 473 (2015) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16 (1988)). "Only when reasonable jurists could not differ can [this Court] say an abuse of discretion has occurred." Thomas v. Commonwealth, 44 Va. App. 741, 753, adopted upon reh'g en banc, 45 Va. App. 811 (2005). Collateral facts that do not support an inference on the issue presented are irrelevant and properly excluded from evidence. See McGowan v. Commonwealth, 274 Va. 689, 695 (2007).

B. Admissibility of Medical Malpractice Evidence

Appellant asserts that the court erred by excluding evidence of medical malpractice because it deprived him of his due process right to assert a defense. He contends that his proffered evidence was admissible to establish that an unforeseeable intervening cause negated his liability for felony murder.

Felony murder is defined as "[t]he killing of one accidentally, contrary to the intention of the parties, while in the prosecution of some felonious act." Code § 18.2-33. The felony-murder doctrine, which originated at common law, imputes malice to a homicide occurring during the commission of a felony. Commonwealth v. Montague, 260 Va. 697, 700 (2000). "To convict a defendant of felony murder . . . the killing must be committed . . . within the *res gestae* of the underlying offense." Woodard v. Commonwealth, 61 Va. App. 567, 572 (2013). "[T]he killing must be 'so closely related to the felony in time, place, and causal connection as to make it part of

the same criminal enterprise.'" Id. (quoting Montague, 260 Va. at 701). All three elements – time, place, and causal connection – must be established for the felony-murder statute to apply. Montague, 260 Va. at 702.

Virginia courts have long recognized that "[a]n intervening act which is reasonabl[y] foreseeable cannot be relied upon as breaking the chain of causal connection between an original act of negligence and subsequent injury." Delawder v. Commonwealth, 214 Va. 55, 58 (1973). See also O'Connell v. Commonwealth, 48 Va. App. 719, 728 (2006). Appellant suggests that this Court "should create a new exception to the felony murder doctrine in which gross medical negligence in the course of treating the victim is an unforeseeable intervening cause that relieves an accused of liability for felony murder." However, neither the law nor the facts support adopting the proposed "exception" in this case.

We recently addressed the issue of intervening medical treatment in the context of aggravated involuntary manslaughter in Levenson v. Commonwealth, 68 Va. App. 255 (2017). In Levenson, the victim was hospitalized with injuries sustained when an intoxicated defendant rear-ended the victim's truck. Id. at 257. The victim consented to medical treatment that ultimately resulted in his death from an injury not detected in an earlier CAT scan. Id. at 258. We ruled that "medical treatment is not a superseding cause if the need for the treatment was put into operation by the defendant's wrongful act or omission." Id. at 260-61. In Levenson, we cited with approval cases from other jurisdictions finding that intervening medical decisions were part of a chain of events set in motion by defendants' criminal acts and therefore could not negate legal liability. See, e.g., People v. Bailey, 549 N.W.2d 325, 335 (Mich. 1996) (A "[d]efendant cannot exonerate himself from criminal liability by showing that under a different or more skillful treatment the doctor might have saved the life of the deceased and thereby have avoided the natural consequences flowing from the wounds."), quoted with approval in Levenson, 68 Va. App. at 261 n.3.

Further, only "an independent, intervening act that *alone* causes the victim's injury or death is recognized as a superseding cause that will exempt the defendant from criminal responsibility for his or her conduct." Brown v. Commonwealth, 278 Va. 523, 529 (2009) (emphasis added). Otherwise, "[a]n intervening event, even if a cause of the death, does not exempt the defendant from liability if that event was put into operation by the defendant's initial criminal acts." Commonwealth v. Jenkins, 255 Va. 516, 521 (1998) (upholding first-degree murder conviction where victim died from aspiration of vomit three days after sustaining gunshot wounds inflicted by defendant). See also Spain v. Commonwealth, 7 Va. App. 385, 394-95 (1988) (affirming felony-murder conviction where victim died of a "stress-induced heart attack" after a burglary).

Despite appellant's claim that the victim's death resulted not from his felonious acts, but from negligent medical care at the hospital, he failed to proffer any evidence that the alleged medical malpractice was a superseding event that acted as the sole cause of death. Dr. Doloresco, appellant's expert, could not conclude that treating the pericardial effusion would have resulted in the victim's survival, given the severity of the blunt force trauma he sustained. He agreed that the blunt force trauma injuries were fatal and the victim would have died if his injuries went untreated. Although Dr. Doloresco testified that the failure to treat the pericardial effusion was a breach of the standard of care, he also agreed that the pericardial effusion was caused by the blunt force trauma from the accident. Therefore, appellant's proffered evidence demonstrated that his criminal acts not only "put into operation" the events causing the victim's death, but also directly caused the victim's death. See Brown, 278 Va. at 529 (finding that because defendant "put into operation" a high-speed chase, he was directly responsible for a victim's death occurring in a collision with a police officer's car).

"Only evidence which bears upon and is pertinent to matters in issue is relevant and should be admitted." Walker v. Commonwealth, 258 Va. 54, 69 (1999). "[E]vidence of collateral facts

and facts incapable of supporting an inference on the issue presented are irrelevant and cannot be accepted in evidence" because "[s]uch irrelevant evidence tends to draw the jurors' attention toward immaterial matters." Coe v. Commonwealth, 231 Va. 83, 87 (1986). Appellant's proffered evidence was incapable of showing that the victim's death resulted solely from medical malpractice. Accordingly, any evidence of medical malpractice was collateral, irrelevant, and properly excluded from the jury's consideration.

Additionally, the court did not deny appellant's due process right to assert a defense. "A defendant's constitutional due process right to a fair trial includes the right to call for evidence in his favor." Moreno v. Commonwealth, 10 Va. App. 408, 416 (1990). However, Dr. Doloresco's testimony would have supported the Commonwealth's theory of the case: that the victim died as a result of injuries he sustained in a car accident that was "related in time, place, and causal connection" to appellant's commission of felony eluding. Woodard, 61 Va. App at 576. Because appellant's proffered evidence was not relevant, material, or favorable to his defense, the court did not err by excluding it. Accordingly, we affirm appellant's conviction.

Affirmed.